YAEGER MILLING COMPANY *vs.* DANIEL BROWN & another.

Bristol.   Oct. 29, 1879. — Jan. 19, 1880.   COLT & AMES, JJ., absent.

A. sent goods to B., to be purchased by him or sold on A.'s account, as B. should elect. In an action of replevin by A. against B. for the goods, A. put in evidence tending to show admissions on the part of B. that he received the goods on consignment merely. *Held*, that B. was properly allowed to testify that, when he received A.'s letter, he decided to purchase the goods.

REPLEVIN of 95 barrels of flour. The assignee in bankruptcy of the defendants appeared, and in his answer denied the plaintiff's title and right of possession of the property replevied, and alleged that the same was the property of the defendants.

Trial in the Superior Court, without a jury, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows:

On October 19, 1877, the plaintiff, without receiving an order from the defendants, with whom it had had dealings for several years, sent to them 100 barrels of flour, and the following letter of that date: "We have a hundred bbls. of choice 4 ace flour, and as freights will advance to-morrow, and it will cost 32 c. more to ship, we thought best of giving you the benefit of our old contract, and ship 100 bbls. @ 7.35, which is somewhat

lower than we quoted it last. We presume you can use the flour, and it is certainly considerably lower than you will be able to purchase it hereafter, but if not agreeable you may sell it for our acct., taking of course into consideration the advance in freights. Please protect on 45 days' draft, with B. lading, for $625." The draft for $625 was for the price of the flour less the freight, which the defendants were to pay, and was sent for acceptance and collection through a bank in Fall River, where the defendants did business, and was presented to and accepted by the defendants on October 27, but was never paid by them, and was afterwards protested by the plaintiff when due. A bill of lading accompanied the draft, and was delivered to the defendants at the time of the acceptance of the draft; and the defendants took possession of the flour, and it was in their store when replevied. The plaintiff paid the freight on the flour, after this action was brought.

The plaintiff introduced expert testimony to show a general custom among wholesale dealers in flour to draw on the consignees of consigned flour at the time of shipment for a part of the value of the consigned goods, and that in some instances, under special circumstances, consignors draw for the whole value ; but there was no general custom shown to this effect.

The plaintiff also introduced the deposition of John Crangle, one of its officers, who testified to two conversations with David F. Brown, one of the defendants, in which Brown said, that he had sold five barrels of flour on account of the plaintiff, and held the other ninety-five barrels as consigned flour, and had always held it as such ; and that one of these conversations was had in Boston a few days before the defendants' failure, and the other in Fall River on the day of their failure. This testimony was corroborated by J. H. Knowles, a salesman in the employment of the plaintiff.

David F. Brown testified for the defendants, and denied the above statements of the plaintiff's witnesses, and said that the flour was received by him on October 30, 1877, though he had accepted the draft three days before. He was then asked the following question, which was admitted against the plaintiff's objection: " At the time you received the flour, did you decide whether to purchase it or receive it on consignment." The

witness answered, "I did decide, and took it on purchase." The witness also showed his invoice book, and testified that the flour was entered as purchased at the time it was received; that he could not tell when he had sold the five barrels, as he had on hand other similar flour at the time ; and that, a day or two after receiving the plaintiff's letter, he decided to purchase the flour.

The judge ordered judgment for the defendants ; and the plaintiff alleged exceptions to the admission of the evidence objected to.

*M. Reed*, for the plaintiff. The defendant Brown had no right, on direct examination, to testify to mental processes or conclusions. He was allowed to state, first, that he decided to purchase the flour when he received it ; and, secondly, that he decided to purchase the flour a day or two after receiving the plaintiff's letter. Such testimony was improperly allowed. The admission of testimony as to the acts of the defendant Brown is not objected to. That objected to is in the nature of an admission of the defendant in his own favor. His decision was not communicated to the plaintiff, and was known to no one beside the witness himself, until testified to in court, except so far as his acts indicated it.

*J. M. Morton, Jr.*, for the defendants.

LORD, J. The only question for trial in the court below was whether the plaintiff sold, and the defendants bought, the flour replevied, or whether the plaintiff as consignor sent the flour to the defendants, who received it as consignees. From the plaintiff's letter it appears that the flour was sent to the defendants for them to exercise their election whether to purchase or to receive it on consignment. That was a fact to be determined by the presiding judge upon the evidence. The evidence was conflicting. The defendant Brown was permitted to testify that he elected to receive it as purchaser, and this evidence was objected to ; and the competency of that evidence is the only question raised on this bill of exceptions. Its competency is too plain for discussion. There was no question of mental processes of the defendant, but simply a question of fact whether he did or did not at the time exercise his election, and accept the flour as purchaser. The finding of the presiding judge is conclusive of the fact; and that finding, having been made upon competent testimony, must stand.                *Exceptions overruled.*